IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BRIDGETTE R. PINKELMAN,       )<br>                                                   )<br>               Plaintiff,            )<br>                                                   )<br>  v.                                            )<br>                                                   )<br>SOCIAL SECURITY ADMINISTRATION,  )<br>                                                   )<br>               Defendant.         ) | 8:06CV373<br><br>MEMORANDUM AND ORDER |

This is an action for judicial review of a final decision of the Secretary of Health and Human Services. Jurisdiction of this court is pursuant to 42 U.S.C. § 405 (g). Plaintiff filed an application for disability benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and under Title XVI, 42 U.S.C. § 1381 *et seq.*, on April 5, 2002. She alleges an onset date of March 2001. An administrative law judge (ALJ) denied plaintiff's request for benefits on October 27, 2004. The Commissioner of Social Security denied plaintiff's claim for benefits thereafter. Plaintiff filed this action alleging the defendant failed to consider her subjective complaints of pain and other nonexertional impairments, failed to accord appropriate deference to the opinions of her treating physician, and posed an inappropriate hypothetical question to the vocational expert (VE). The court has carefully reviewed the record, including the Social Security transcript, Filing No. 11, and supplement to the record, Filing No. 13[1], as well as the parties' briefs and the relevant caselaw. The court concludes that the ALJ's decision is not supported by substantial evidence on the record as a whole and shall be reversed.

---

[1]Plaintiff's motion to supplement the record, Filing No. 13, is granted. However, the court will not consider medical records that contain evidence of plaintiff's health after the date of the ALJ hearing on October 27, 2004.

**LEGAL STANDARD**

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. A claimant is disabled when the claimant is "not only unable to do his previous work but cannot, considering . . . his age, education and work experience, engage in any other kind of substantial gainful work which exists in [significant numbers in] the national economy . . . either in the region in which such individual lives or in several regions of the country." 42 U.S.C. § 432(d)(2)(A).

An ALJ evaluates a disability claim according to a five-step sequential analysis prescribed by Social Security regulations. The ALJ examines

> any current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity and age, education and work experience. *See* 20 C.F.R. § 404.1520(a); *Braswell v. Heckler*, 733 F.2d 531, 533 (8th Cir. 1984). If a claimant suffers from an impairment that is included in the listing of presumptively disabling impairments (the Listings), or suffers from an impairment equal to such listed impairment, the claimant will be determined disabled without considering age, education, or work experience. *See Braswell*, 733 F.2d at 533. If the Commissioner finds that the claimant does not meet the Listings but is nevertheless unable to perform his or her past work, the burden of proof shifts to the Commissioner to prove, first, that the claimant retains the residual functional capacity to perform other kinds of work, and second, that other such work exists in substantial numbers in the national economy. *See Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). A claimant's residual functional capacity is a medical question. *See id.* at 858.

*Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000).

When reviewing the decision not to award disability benefits, the district court does not act as a fact-finder or substitute its judgment for the judgment of the ALJ or the

2

Commissioner. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995). Rather, the district court will affirm the Commissioner's decision to deny benefits if it is supported by substantial evidence in the record as a whole. *Eback v. Chater*, 94 F.3d 410, 411 (8th Cir. 1996). Under this standard, substantial evidence means something "less than a preponderance" of the evidence, *Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998), but "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Ellison v. Sullivan*, 921 F.2d 816, 818 (8th Cir.1990). "Substantial evidence is that which a reasonable mind would find as adequate to support the ALJ's decision." *Brown v. Chater*, 87 F.3d 963, 964 (8th Cir. 1996) (citing *Baumgarten v. Chater*, 75 F.3d 366, 368 (8th Cir. 1996)).

In determining whether the evidence in the record as a whole is substantial, the court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). If the court finds that the record contains substantial evidence supporting the Commissioner's decision, the court may not reverse the decision because the record also contains substantial evidence that supports a different outcome or because the court would have decided the case differently. *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001).

**DISCUSSION**

### A. Background

At the time of the hearing before the ALJ, plaintiff was 44 years of age and had an associate's degree. She is certified as a respiratory therapist. Prior to working as a respiratory therapist, she worked as a laborer. Plaintiff contends that she has suffered from both physical and mental impairments since 2000. Dr. Mark Lewis treated her for cervical stenosis, fibromyalgia, back spasms, depression and anxiety. Tr. at 150-168. In

July 2002, she was hospitalized for a grand mal seizure, probably caused by an overuse of Xanax.  From April 2002, through June 2003, David Sharp, D.O., treated plaintiff for fibromyalgia, lumbar disc disease, depression, hypothyroid and anxiety disorder.  Dr. Susan Hamade also treated plaintiff for these illnesses from 2001 through September 2005.  Dr. Richard Belatti treated plaintiff for pain in 2003.  Dr. Todd Kumm, diagnosed paraspinous muscle tenderness, spasms in the lumbroscral spine, fibromyalgia, degenerative joint disease, seizure disorder, hypothyroidism, depression, anxiety, carpal tunnel, and insomnia.  She also had injury to her left foot.  Plaintiff took multiple medications the past seven years including Xanax, Klonopin, Dilantin, Celexa, Vicodin, additional pain medications, and Soma.  She alleged crying spells for up to five hours a day.  Tr. at 504 and 510.

She began treatment for depression and anxiety in September 2000, with Dr. Hamade.  Dr. Sharp noted bipolar and depression symptoms and severe anxiety.  Plaintiff began working with a psychiatrist, Dr. David Nitcher, in April 2001.  He diagnosed her with major depression, anxiety, bipolar Type II, mixed personality traits and gave her a Global Assessment of Functioning score of 58-63, a range that indicates moderate symptoms and moderate difficulty.  Tr. at 279.  He indicated she was "marked" in one daily living activity, two areas of concentration, and six areas of social functioning. Tr. at 281.  He rated her poor in five work activity areas. Tr. at 293-95. Thereafter, plaintiff received treatment from Dr. Luis Bencomo who lowered plaintiff's GAF score to between 50-55.  Several doctors noted that plaintiff had a history of physical, sexual and emotional abuse during her childhood, which caused post-traumatic stress syndrome.  Dr. Bencomo noted that plaintiff had flashbacks, mood swings, crying spells, and had been fired from several jobs.  In

February 2004, Dr. Eugene Oliveto treated plaintiff at the Spring Center for mood swings that had become extreme. Tr. at 355-57. Dr. Oliveto diagnosed plaintiff with Bipolar I disorder and post-traumatic stress syndrome. Dr. Oliveto at one point found that plaintiff's bipolar disorder was stable with medication, Tr. at 403 and 435, but a few months later determined that plaintiff was a "very unstable person, who under stress can become acutely suicidal and self-destructive." Tr. at 458. Dr. Oliveto referred again to plaintiff's on and off again suicidal thoughts. Filing No. 13, Ex. SE6/12. He further determined that plaintiff met the criteria for disability. *Id.* Teresa M. Kring, an Advanced Practice Registered Nurse in Dr. Sharp's office, filled out a medical source statement for plaintiff on May 29, 2003, which limited plaintiff's sitting and standing in a working day, and indicated plaintiff's mental and emotional abilities were "poor" for sustained work activity. Tr. at 300-308.

Plaintiff submitted written materials and testified at trial. She indicated that she lost respiratory therapist jobs at three hospitals due to her illness; she can't bathe alone due to dizziness and balance issues; her friends and family do much of her household tasks; she cannot drive due to her seizures; she can only sit for limited time because of her back pain; and she is limited in climbing stairs because of strength and mobility. However, she testified that she prepares some meals each week, washes dishes a couple of times a week, dusts once each month, and changes the bedding occasionally. Tr. at 486-90, 508. She also testified that she did nothing for recreation, spends most of her time at home, can't concentrate enough to read, and visits with others about one hour a week. She drives, at most, one time per week.

Plaintiff's sister, Michelle Ross, was sequestered during the hearing. Plaintiff's counsel offered her as a witness, but the ALJ declined to hear her. Instead, he told counsel she could "offer a proof." Ms. Ross would have testified that plaintiff could not control her emotions; would not be able to interact appropriately with people on the job; could not be trusted with watching her children; cannot maintain concentration; and she had watched her sister physically assault a neighbor over a horn honking. Tr. at 566-67. Her sister would have testified about other erratic behaviors. Her husband confirmed three seizures; and her sister-in-law confirmed that others cook for plaintiff and that plaintiff falls apart when in the hospital.

The ALJ determined that plaintiff could perform sedentary work. He rejected her complaints of pain, mental illness, sleeplessness, and medication issues as prohibiting her from doing all work. He found she could do some household chores; was dependent on narcotics; that at least one seizure was caused by withdrawal from benzodiazepines; that her seizure disorder could be controlled by medication; that she drives; and there is no record of memory problems. Tr. at 19-21. The ALJ gave deference to the RFC performed by the medical consultants for the defendant which determined plaintiff could do sedentary work, and the ALJ gave "some but not controlling" and "less weight" to treating physicians. Tr. at 21, 23, 24, 25 and 26. He gave no weight to Ms. Kring's report. Tr. 22. The ALJ found that plaintiff could do sedentary jobs in the national economy, and he reduced that by 50% for her nonexertional impairments, such as memory, attention, concentration and understanding. Tr. at 28, 29. The ALJ then accepted the VA's testimony that there were significant jobs plaintiff could perform in the national economy. *Id.*

### *B. Treating Physician*

Error exists when an ALJ fails to consider or discuss a treating physician's opinion that a claimant is disabled when the record contains no contradictory medical opinion. *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). "[A] treating physician's opinion regarding an applicant's impairment will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.'" *Prosch v. Apfel*, 201 F.3d 1010, 1012-1013 (8th Cir. 2000) (*quoting* 20 C.F.R. § 404.1527(d)(2) (2006)). The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hogan v. Apfel*, 239 F.3d at 961. An ALJ cannot substitute his opinion for the medical opinions. *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990).

Plaintiff first argues that at Step 2 of the sequential analysis the ALJ completely discounted the evidence of depression, bipolar, and anxiety disorders, disregarding these illnesses from the list of severe impairments. Tr. at 18. Plaintiff also contends that the ALJ relied on the consulting physicians and not the treating physicians. The court agrees. The evidence presented by numerous treating physicians in this case is well-supported and not inconsistent with other evidence. Accordingly, it must be given controlling weight. As for the nurse-practitioner, she is not a treating medical source, but the ALJ should have at least given her opinion some weight. *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003) (nurse-practitioner considered as other medical sources).

7

It is clear to the court, after reviewing the opinion of the ALJ, that he relied heavily on Dr. Glenn Knosp and Dr. Donald Larson, consultative doctors, and Christopher Milne, Ph.D., and Mr. Branham, Ph.D., consultative psychologists, and gave their opinions undue weight. The ALJ gave them "great weight" apparently because they had reviewed the objective evidence. However, the ALJ did not give such credence to plaintiff's treating physicians who treated plaintiff over a number of years for both her physical and mental conditions. In this regard, the ALJ erred and the court so finds. The treating doctors were very consistent in their findings. The ALJ erred in discounting their opinions to such an extent, particularly with regard to plaintiff's mental health issues as discussed hereinafter.

### *C.  Pain and Other Nonexertional Complaints*

The standard, in the Eighth Circuit, for evaluating a claimant's subjective complaints of pain in Social Security cases is *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). According to the Eighth Circuit, an ALJ may not disregard a plaintiff's subjective complaints solely because the objective medical evidence does not fully support them:

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. [ALJ] must give full consideration to all of the evidence presented relating to subjective complaints, including the [plaintiff's] prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
>     1.    the [plaintiff's] daily activities;
>     2.    the duration, frequency and intensity of the pain;
>     3.    precipitating and aggravating factors;
>     4.    dosage, effectiveness and side effects of medication;
>     5.    functional restrictions.
>
> The [ALJ] is not free to accept or reject the [plaintiff's] subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaksi v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (emphasis in original). "Pain is recognized as disabling when it is not remedial and precludes claimant from engaging in form of substantial gainful activity; mere fact that working may cause pain or discomfort does not mandate finding of disability." *Cruse v. Bowen*, 867 F.2d 1183, 1183 (8th Cir. 1989).

"Not all pain reaches a level [at] which is disabling. The claimant's level of care is not consistent with an individual who alleges the severity of her complaints." *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987). "While the ALJ may not discount a social security disability claimant's complaints solely because they are not fully supported by objective medical evidence, a claimant's complaints may be discounted based on the inconsistencies in the record as a whole." *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005). "Allegations of disabling pain made by claimant seeking social security disability benefits may be discredited by evidence that claimant has received minimum medical treatment and/or has taken only occasional pain medication." *Kelley v. Callahan,* 133 F.3d 583, 589 (8th Cir. 1998).

The court agrees with the plaintiff that the ALJ did very little to develop the record on plaintiff's mental illness issues. The record is void of questioning in this regard, with the exception of a response he permitted at the end of his questioning. Tr. at 559. The ALJ did not ask a single question regarding plaintiff's well-documented bipolar I and II diagnosis; her depression; or her anxiety spells. In fact, these issues did not come up until the end of the ALJ's questioning when he asked plaintiff if she wanted to add anything. Tr. at 504. She then spoke of her bipolar disorder, and thereafter, her attorney asked her further questions about her mental health. It is unacceptable, if not unbelievable, that the

ALJ would not question her in this regard. He absolutely failed to acknowledge the mental component of plaintiff's claims. It is the responsibility of the ALJ to fully and fairly develop the record. *Wilcutts v. Apfel,* 143 F.3d 1134, 1137 (8th Cir. 1998).[2]

The court can find no basis for the ALJ's ignoring plaintiff's mental illnesses, pain and other subjective symptoms. The evidence in this case is clear. Plaintiff suffers from pain. Plaintiff suffers from bipolar disorder. Plaintiff suffers from anxiety. Plaintiff suffers from depression. The ALJ failed to adequately consider these illnesses, even in this case where the evidence is overwhelming.

### D.  *Vocational Expert*

To assist an ALJ making a disability determination, a VE is many times asked a hypothetical question to help the ALJ determine whether a sufficient number of jobs exist in the national economy that can be performed by a person with a similar RFC to the claimant. A hypothetical question is properly formulated if it incorporates impairments "supported by substantial evidence in the record and accepted as true by the ALJ."

---

[2] Plaintiff contends that the ALJ has a bias against persons with mental illness. In support, plaintiff filed a supplement to the record. Filing No. 13, and Tr. at 469-70. Plaintiff presented evidence of alleged bias to the appeals council. The appeals council issued a ruling finding no bias, concluding that it only reviews cases on a case-by-case basis. Counsel states that after the conclusion of one of her hearings, the ALJ referred to psychiatrists as merely advocates for their patients and feel that "half should be on disability and the other half should be lining up to apply for disability." Filing No. 13, supp. ex. 3. Further, counsel notes that while acting as a visiting judge in Omaha, this ALJ denied 100% of the cases he considered, versus 35% denied by other out-of-state visiting judges and 7% denied by Omaha judges at that time. Filing No. 13, supp. ex. 2/2. The plaintiff argues that such a pattern denotes bias. *Curran -Kicksey v. Barnhart*, 315 F.3d 964, 972 (8th Cir. 2003). This court need not decide whether the ALJ was biased in this case. However, the court is concerned by the cavalier attitude of the ALJ. For example, the ALJ asked plaintiff regarding a treating doctor's statement as to her inability to lift anything. The ALJ responded asking her if that included lifting an envelope. Tr. at 492. Also, as previously stated, the ALJ failed to ask plaintiff about her mental disabilities. Plaintiff volunteered that she was bipolar, and the ALJ responded that such as statement is a "diagnosis." Tr. at 504. The court notes this is not the first time it has questioned the objective review by this particular ALJ. *See Cumerford v. Social Security Administration*, 05CV513, Filing No. 15 n.2 (D. Neb. November 30, 2006). Because of the serious complaints alleged by counsel in this and the *Cumerford* cases and as supported by the records in each case, the court will ask the appropriate agencies to conduct further review.

*Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005) (citing *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). "[A] vocational expert's responses to hypothetical questions posed by an ALJ constitutes substantial evidence only where such questions precisely set forth all of the claimant's physical and mental impairments." *Wagoner v. Bowen*, 646 F. Supp. 1258, 1264 (W.D. Mo. 1986) (citing *McMillian v. Schweiker*, 697 F.2d 215, 221 (8th Cir.1983)). Courts apply a harmless error analysis during judicial review of administrative decisions that are in part based on hypothetical questions. For judicial review of the denial of Social Security benefits, an error is harmless when the outcome of the case would be unchanged even if the error had not occurred. *See Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003). Because a VE's testimony may be considered substantial evidence "only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies," *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997) (*citing Porch v. Chater*, 115 F.3d 567, 572-73 (8th Cir. 1997), *and Pickney v. Chater*, 96 F.3d 294, 297 (8th Cir. 1996)), the court finds that the VE's testimony was not substantial evidence.

The ALJ asked the VE a series of questions which included personal characteristics and physical limitations and moderate limitations in concentration and memory and routine tasks with a seizure precaution. Tr. at 515-517. Plaintiff argues the ALJ failed to ask the VE, William Tucker, to consider the marked limitations, the fibromyalgia, and lumbar disc disease, and plaintiff's mental and emotional illnesses, assessed by Dr. Oliveto, Dr. Nichter, and Ms. Kring, and how they affect her ability to work. The court agrees. The ALJ failed to pose a hypothetical to the VE that would adequately consider the plaintiff's mental and physical impairments.

The court has already found that the ALJ erred in failing to consider plaintiff's severe mental illnesses. Again, the ALJ failed to include such mental illnesses in any of his hypotheticals to the VE. This is error. The ALJ must pose hypotheticals that are reasonably related to the evidence. The evidence in the record of plaintiff's mental health issues is substantial. To ignore such evidence and fail to present it in hypothetical form to the VE is error. Consequently, there is no substantial evidence to support the VE's conclusions, and the testimony of the VE will not be considered.

"[W]here the medical evidence in the record overwhelmingly supports a finding of disability, remand is unnecessary." *Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Nalley v. Apfel*, 100 F. Supp. 2d 947, 954 (S.D. Ia. 2000). The court determines that the record overwhelmingly supports a finding of disability. Remand to take additional evidence in this case would only delay the receipt of benefits to which the plaintiff is entitled.

THEREFORE, IT IS ORDERED that the findings and conclusions of the ALJ are reversed and benefits are awarded. This cause is remanded to the Commissioner for computation and payment of benefits. A separate judgment shall be entered in conjunction with this Memorandum and Order.

DATED this 11th day of December, 2006.

BY THE COURT:

**s/ Joseph F. Bataillon**
Chief U.S. District Judge